dash six zero zero five two Southwest Airlines Company versus Transportation Security Administration. Mr. Feinberg. Good morning your honor, counsel, may it please the court. Adam Feinberg on behalf of Petitioner Southwest Airlines. The main issue in this case is whether a user fee statute gives TSA the authority to impose a fee when there is no user. It does not. The statute instructs TSA to impose a fee on passengers who take a trip in air transportation to pay the cost of certain enumerated security services, every one of which is specific to an airport or a flight. In this case, the customers canceled their tickets before flying, never took a trip, never engaged in air transportation, and never benefited from any of the security services listed in the statute. Why didn't Southwest refund those fees to the person that booked the passage? Well, there are two issues there. First of all, Southwest contends that it did in the form of what's called an RTF or residual travel, which is a typical store credit that the passenger could use for up to a year to buy any transportation they wanted in Southwest. The IRS, for example, treats that exact thing as a refund, and that's what Southwest gave. So Southwest's position is that they did, in fact, give a refund. But I think the bigger issue on the statutory interpretation front is there's no requirement whatsoever that Southwest gives a refund. There's nothing in the statute that requires that, nothing in the regulations that require that. The only thing that even contemplates that notion is an informal guidance letter that TSA sent out in 2002. What if Southwest's policy for non-refundable tickets said, you just lose your ticket? I think we would still win. But would you then have to refund the $6? To the customer. Right. You had no RTF credit down the line policy. Correct. We wouldn't have our second and third arguments, but we would still vote on the main statutory argument, because TSA fundamentally doesn't have the authority to ever obtain a fee if no passenger travels. The fee attaches to a traveling passenger. There are more than... I agree with that as the overarching effect of subsection A. My difficulty with the case is there is some friction with subsection E. It all seems to come out of, but correct me if any of this is the fact that as a courtesy or convenience, they allow the collection, they being the government, at the point of sale. And therefore, we get into this world of, oh, what happens if they never go through the turnstile? But is that really where the difficulty of this case emerges from? I believe you're right, Your Honor. I would point out, though, that there may be two reasons why that happens. But fundamentally, TSA, that's what they want. The guidance under 2002 says you have to remit the funds by the end of the month following the sale of the ticket. Our view is that's not required anywhere in the law, and nobody's ever challenged that, because it turns out to be quite convenient for the customers and the airlines. But that's not required at all. But I think that... Let's say you prevail. I mean, am I really missing something? Could TSA say, okay, fine, we were doing that to help you out, make it easy for you to collect as our agents. But if you really want it as they walk through the turnstile, we'll do it. That is a response. Can you accept that? That would be completely acceptable, I think, to the airlines. And I think that's the way that the statute reads. Have any customers seen for their refunds? Of this TSA fee? They have, and they've lost. This court, in fact, has never heard of such a case. But that's very uncommon. I think most customers understand... Wait, I'm sorry. When you say they've sued and lost, sued whom? Southwest or TSA? Southwest. And on the theory that, well, that was... You used two different verbs in the brief. They forfeited their right by accepting the RTF, or they consented to the loss of that refund. But those are the two verbs you've used, correct? Right. Basically, the passengers accepted the diminished refund in exchange for this wildly popular, and we've all been on Southwest, opportunity to fly later. That's the crux of your theory, isn't it? Well, I think that's the crux of one of the theories. And I appreciate multiple, but I also, my brain works better if you tell me which is the most persuasive of alternate ways for you to win. Well, I actually think the most persuasive is not that one, although I think that one's quite persuasive as well, but rather the simple point that statutorily, TSA never should obtain a fee if no passenger traveled. But the difficulty with that is Southwest shouldn't either. Well, Southwest, its relationship with the customer is, and maybe this is where you were going, John Hansen. Southwest's relationship with its customer and who gets to keep the money in between those two is governed by contract. That's exactly what the Court of International Trade held in an almost identical case, literally identical fact. And that's the position you're asserting in the other circuits that aren't as advanced as our case is? Correct. Okay. It's all premised on Judge Katzmann's decision in Southwest. Well, I wouldn't say it's all premised on that, but it flows from that. It's a similar type, similar argument. And the statutory provisions are almost identical. The statute in the CIP case also required collection and remittance of anything that was collected. So it's identical to what we have here. And the court said, that's not good enough. You, in that case, customs and border protection, you cannot obtain funds unless the passenger travels because that's what the user fee is all about. But the statute also does say you've got to remit whatever you collect to TSA. And if it's your response, we do, then they let us discount it. So the statute does imply that anything you collect has got to go to them. I think we have three or four responses. The first one is exactly as you just said, we do do that. We give the money back in the form of this RTF, which is what the parties contracted would be the form of a refund. By the way, that's an issue that is regulated by the Department of Transportation, not TSA. But the notion of every fee that is collected needs to be remitted, I don't think holds water at the end of the day. It's very similar to what happened in the Turkey Hull bankruptcy case that the Supreme Court decided, where they looked at a provision on the Foreign Sovereign Immunities Act that specifically said something like foreign states are immune from suit in all U.S. courts and state courts. That's it. And the bank, the defendant said, well, so we have a civil case here, or a criminal case rather, we are immune. And the court said, no, you could read the statute in isolation to refer to both civil and criminal cases, but the rest of the statute makes it clear that the universe it's discussing is only civil cases. And so you can't look at that one provision in isolation and take it out of the statute. The CIT relied on that case, and that's exactly what we have here. We have the operative provisions in the heart of the statute in A1, and then a bunch of other ones that confirm what A1 means. And then we have these ancillary administrative provisions that say, well, anything you collect, you've got to turn over. But I don't think it's credible to read those provisions as trumping the general authority section in A1. Did the D.C. Circuit in the Alaska Airlines case say it does trump? No, the D.C. Circuit, if anything, said the opposite. They looked at this situation, and that case had nothing to do with this particular bathroom scenario. It had to do with different intent by Alaska Airlines. But they talked about TSA's refund policy, and it obligates a refund. Well, it discusses specifically the 2002 guidance letter, so that's the situation we have here where a passenger cancels. And it describes that scenario as one in which the fee had never been incurred. Not that it was incurred, had to be paid, and maybe you could get it back later. Hadn't ever been incurred, and we think that's the right way to view the law. I also want to point out that this notion that these ancillary provisions that say you have to collect all the fees and remit them, they aren't even fully believed by the government. TSA itself has this massive exception to that where if you give the passenger a refund, well, why? TSA's refund, page 15, says there are no exceptions. You always have to pay the fee. But they turn right around and say, well, that's not really true if you just gave them my document. You say those are mutually exclusive ordinance? I'm sorry? You say the government's got mutually exclusive ordinance. It's always to them. It can't be... Exactly, exactly. It just makes no sense. The proper way to interpret the statute is that the statute attaches the fee when there's a traveling passenger who takes a trip, and that's it. If you don't read it that way, TSA has no authority to then make this exemption. They can't just say, well, you know, we don't think it's fair. Does TSA ever refund these security fees itself directly to the passengers? Ever? Not that I'm aware of. So when they say they want it, they have to get it. Where would it end up if the passenger never flew? It would stay with the government? Well, that's what the government's theory is. Well, they never actually tied the knot. I guess I'll ask them. A big question for me was, does TSA have a mechanism to do it the way they elected? Because they don't want you to do it the way you do it. So presumably, they must have a mechanism. I don't believe they have such a mechanism, and I don't believe that that has ever happened, because there was some disputes with the airlines as an industry and TSA not granting refunds at all. And TSA produced to a committee in the House of Representatives in response to an inquiry a list of all the pending refund actions. They went back all the way to 2010, and we tracked them all down. They were all on behalf of airlines. None were on behalf of passengers. Is there any strong case out there you'd point to other than the Court of International Trade that's highly illuminating of this unusual? That's really the case. I mean, it's so close to what we have here. There aren't any cases that are like that. That's for sure. Too bad the government dismissed the appeal, not from your standpoint. Exactly, but I think that's quite telling. I think that at some level, they understand that, at least the folks in the Department of Justice who were in charge of that particular case, that the fee applies when somebody travels. That's the only time the fee applies. And if you sort of believe what the government's saying, it wouldn't have the authority to do all kinds of things. It could keep a fee when no one traveled and you gave the refund to the customer. According to its theory, it just decides out of its good graces that it's not going to do that. Or take the example of the residual travel fund that actually is utilized. TSA says, well, that's not what happened here. We don't need to worry about that. We do that as, you know, just as an enforcement decision. But the implication of that is that TSA says that if you bought a ticket, paid a fee, canceled, got a residual travel fund, used it the next day to buy a new ticket, you have to pay another fee. We can make you pay a second fee. That just cannot be right. We don't have to rely on the good graces of TSA to avoid that. I think the statute is what prevents it. In the record, remind me, what's the fine print in these RTFs? Is it pretty explicit? You're going to lose your otherwise right to have given back the fee? Yes, it's unbelievably explicit. It says there's a section called refunds that goes through the different classes of tickets and the so-called non-refundable tickets. It says something like you are, you will be, you're not entitled to a refund except as provided in this section or other section. And the very next subsection says something like you will get a travel credit and the travel credit will expire based on the rules that are in place. If you'll bear with me a moment. No, that's fine. That's enough. Yeah, that's it. For example, 40, 41. I did want to touch on one or two points in my last minute or so on our second and third argument. So the second argument is that these RTFs are refunds. And so even if you believe the government's statutory interpretation, we should still win because the parties have contracted that this is the valid form of refund. And the 11th circuit, for example, the CABR decision site says that's a valid thing to look at what the parties contracted for. And as I mentioned before, TSA concedes that a utilized RTF is a refund. It has no sensible position that one that is utilized is a refund, but one that isn't utilized, and by the way, we might not know that for a year, isn't a refund. And we mentioned in a brief the Department of Transportation has a regulation specifically says in this exact context, these types of credits are in fact refunds. And then finally on the fair notice point, I think we laid a lot of this out in the brief, but I want to just raise two points. First of all, the 2002 guidance letter, TSA says that is addressing this exact situation, but it's not. It's addressing a situation where a ticket might expire, but that, what we have here is something that's actually given in the form of an RTF, and what you get is much broader than a ticket. A ticket might be subject to restrictions. You might only be able to use it on the same route. It might be subject to change fees if you want to exchange it. An RTF is a pass. You can use it on any flight you want on Southwest. TSA's position is a bit like saying, well, a refund is the same as if you bought an object and haven't yet returned it, but might, and it might be eligible for a refund on the restocking fee. That's not the same as having refunded it and gotten the store credit. And second of all, I want to just point to the July 11, 2017 email exchange that TSA relies on here, because that email exchange, which by the way comes after the first audit period is over and into the second audit. Aside from the fact that it's not clear in there that this is TSA's final position, the TSA auditor, or the CBP auditor is doing this on behalf of TSA, specifically calls the RTF's refund, which is exactly our position, and she writes to the manager at TSA asking for guidance, because she doesn't know what the right answer is. The notion that Southwest doesn't know what the right answer is when the government auditors don't, I think, defies credibility. With that, Your Honor, I'm going to reserve the rest of my time for rebuttal. Thank you. May it please the court, Whaley Shaw for TSA. I am absolutely happy to concede that where a passenger cancels their ticket and does not fly, that the passenger no longer owes the 9-11 security fee. The question in this case is not whether the passenger owes the fee, the question is what happens if an airline collects the fee on behalf of TSA, the passenger cancels their ticket and no longer owes the fee, what happens to that fee? And the statutory text actually expressly answers this question, or maybe not expressly, but if you read the statutory provisions, it's very clear what's supposed to happen to the fee. So first, the statute requires in subsection A that the, I'm sorry, that the passenger pay the fee, and then in subsection E, the airline is required to collect that fee and remit it to the government. What about my pot calls the kettle black question, just factually, let's say E is right, it all comes to you, even though they don't fly, do you individually refund? TSA does not individually refund the fees, the reason that they do not do so is that it is not administratively feasible for TSA to make individual refunds of five dollars and sixty cents to millions and millions of passengers. But that's saying TSA gets the money? I mean, that's, so all your criticism of Southwest for holding it, you're saying you've got to get it and you, the government, gets it. No, no, what TSA has done, well let me back up, there is a statutory provision in the statute, subsection G, that expressly says what is happening, what is supposed to happen when a fee has been paid in excess or by mistake. So that tells us, first of all, that the statute applies to all fees collected, even if the passenger doesn't end up owing the fee. And so under subsection G, TSA has established a refund procedure that is designed to ensure that passengers can get the fee back. And under that procedure, the way the thing, the refund procedure is supposed to work, is that airlines refund the passenger because they are the ones that have a direct relationship with the passenger and then they can get that money back from TSA. But then what's wrong with their, what they call the second approach, that they do refund it, they just say you have to travel within a year and you're fully informed that if you don't, you don't get that feedback. It's pretty transparent. So first of all, I, you know, I think if they make that argument, we have to accept again that, you know, this is in fact, we are obligated to make a refund. And so the reason that that does not work is because this is a fee that Congress obligated airlines to collect on behalf of TSA. This is not an airfare, this is not a matter of private contract between the parties. This is a fee that the airlines are required to collect on behalf of the government. The statute specifies how that fee is supposed to be collected, remitted, and refunded. And so therefore there's not, there's no scope for private contract as to what happens to the fee. That's all government statute by regulation and the refund scheme that TSA. Has any case said that? Because again, the court of international trade, you call it greatly flawed, but of course then the government dismisses the appeal. Right. So what's the case that says TSA gets to regulate these subsequent RTF arrangements that passengers seem to really enjoy? Right. It's not a question of TSA, um, sort of regulating, uh, passengers refunds. The point is that the statute provides again, governs the collection remittance and refund of the fee. TSA has established a procedure that's designed to accomplish that refund. And obviously if Southwest doesn't follow that procedure, then they're not entitled to then claim that money back from TSA. Again, TSA wants the money to go back to the customer. And this is the way that in which TSA said they want the money. The statute gives only that option. They get the money. So when you say they want it to go back. No, no. What TSA wants is for these fees to be refunded to the passenger and the way in which they have done so is to establish a procedure pursuant to express statutory authority under subsection G that says that, um, airlines should refund the, uh, refund the fee on behalf of TSA and then TSA will effectively reimburse the airline for that refund. So really what, what's happening is TSA is doing precisely what's subsection G says. TSA is refunding the passenger. The airline is only serving as an intermediary or conduit for that refund, just like Congress specified that airlines must serve as a collection agent or conduit for the collection of the fee and refunding the fee. They also serve that same purpose. So, I mean, Congress obviously could have required that TSA have an agent, you know, at every boarding gate to collect the fee, but that's not what they did. They asked the airlines to do this. They required the carrier selling the airfare to, um, to collect the fee. And then TSA regulations further make clear that the fee must be collected at the time that the fare, the ticket is sold. What would you say is the grave flaw in the court of international trades decision? The most important flaw is that the court rested all of its analysis on the idea that, that within that case, CBP is not entitled to a fee when no services are provided. And again, that misses the point because, you know, as I said, at the start of my argument, I'm entirely happy to concede for purposes of this argument that no fee is owed. The question that the court failed to grapple with is what happens to a fee that is properly collected because the, the, you know, the passenger purchased the ticket, but then ultimately turns out not to be owed. That's the same situation that occurs. For example, when an employer withholds income taxes, they, they, they properly withhold income taxes from an employee. And then it turns out, obviously the employee owes, the employee might end up owing more or less. And so here, again, what we have is a situation where the airline collects the fee upfront, and then the passenger ends up owing less than was collected. And when that happens in the income tax context, there is a refund procedure that governs how the taxpayer gets their money back. Just the same here, there is a refund procedure that specifies how passengers are supposed to get their refunds. And we cite a number of cases in which courts have held that just because the, you know, the fee or the tax ends up not being owed, that doesn't mean that the refund procedure doesn't apply. So for example... But I thought, why aren't they complying with subsection A when they do remit it to you in the first instance? And then you permit the discount. Correct me if this isn't how it's working. Right. And then they've got their discount and they decide, okay, all of you who fly on Southwest, you might want a much bigger contractual convenience. Right. So, so the, what, what is happening, the reason that they are not complying with the first, there's an instance in which the airline, you know, the ticket is canceled quickly enough that the airline never remits the fee to Southwest, but I'm sorry, to TSA. And so in that case, the airline has not complied with its obligation. Again, sections E1 and E3 specify that all fees collected must be remitted to TSA. And the only exception to that is subsection G, which says that TSA may refund the fee. So if they haven't complied with the refund procedure under subsection G, then their obligation to remit the fee under E1 and E3 still applies. And in the, in the second scenario where they've already remitted the fee to TSA and then the passenger cancels the ticket, then... That's the one that led to the big audit amounts, right? Right. So, so in that, in that scenario, what they're doing is they are, um, they are offsetting that purported refund against their future remittances. So even though they're not failing to remit that particular fee, they're choosing not to remit some other fee that was collected from a different passenger as an offset so that they can get their money back. But they are not entitled to fail to remit that fee if they have not complied with subsection G. Again, the statute contemplates a one-way flow of funds. E1 and E3 make clear that all fees collected go to TSA. The only exception, the only way in which money can move in the other direction is under subsection G, and that's, that's the authority pursuant to which TSA established this refund procedure. If Southwest does not follow that refund procedure, then they cannot, um, decline to perform their obligations under E1 and E3. Again, uh, you know, they, they have to, if they collect the fee, they have to remit it unless there's a proper refund. What's TSA going to do with it? I, I wanted it clear about that. Uh, what is TSA going to, well, again, what TSA wants is for the fee to be refunded, but in order for this, I'm sorry, refunded to the passenger, TSA does not have the ability to make. So what, what does TSA do with it? It uses it for the, uh, the, you know, statutory purpose that's required of all of these fees, which is that. You say you want it remitted, but, but, but that's not going to happen, right? That's not going to happen only because Southwest is declining to performance obligations under the refund scheme. And so the way to encourage airlines to give them an incentive to properly refund their passenger, as opposed to keep, it is to say that airlines can't keep the money for itself because if the airline's alternative. I don't understand this. You say Southwest should, in 30 days or X number of days, send the fee to TSA, then the passenger doesn't travel. Southwest is supposed to refund the fee to the passenger. How does Southwest get the fee back? They get the fee back by offsetting that refund to the passenger against their future remittances. No, how does it, let's, you say you want a refund. How does TSA, they actually refund the fee to the passenger? How do they get the money back from TSA? Southwest. So if Southwest actually performs a proper refund of the fee to the passenger, then Southwest can take that amount out of its future payments to TSA. And so Southwest is made whole. Uh, it doesn't lose any money. It just doesn't keep the fee for itself. And the money goes where everyone wants it to go, which is to the passenger. And so it's very important in the scheme that Southwest not be able to keep money for itself because if the alternative for Southwest is that TSA gets the fee, then obviously TSA would rather refund its passenger and earn its passengers goodwill. But if the alternative is that Southwest can just keep the money for itself as a pure profit, then obviously Southwest would prefer to keep that fee and make it difficult for its passengers to collect that. Could Southwest announce tomorrow a $1 convenience surcharge for dealing with the headache of TSA? So you're going to get your 560 for every one-way route, but Southwest is going to say as a matter of our contract with our end users, we're going to impose a $1 surcharge. So if you're going to fly Southwest, I'm not saying it's a good business decision, but you're flying Southwest, it's going to be 660, not 560. Could they do that? Uh, you know, I, I haven't thought about what the precise legal implications of that would be. I think that would be very troubling. Why would that be troubling? I mean, the statute very clearly says they can't keep a portion of your fee, right? So E makes it very clear that they can't charge a surcharge. Like they can't say, yeah, it's 560, but we get to keep 60 cents because it's a pain in our butts. They don't, it's very clear about that, but it doesn't say anything about them imposing an additional dollar or whatever. Yeah. I mean, I, I think that would be, um, that would seem to be a complete end run around the statutory provision saying that Southwest can't keep any portion of the fee. No, no, no, no, no. They're not keeping any portion of the fee. You're getting your 560. Yeah. That, that would be like, you know, if, um, uh, you know, uh, someone were to say that, you know, an employer were to say, well, I'm withholding income taxes. And if you get any portion of this refund, I'm going to impose a penalty on, on the employee. No, no, no, no, no. It's not the same amount and it's not coming out of the refund. It's a, it's, it's like every American knows when you go to buy an airline ticket, it says whatever, $99. But my goodness, like there's this surcharge and this thing and, you know, the sales tax and whatever, there's a bunch of things and they decide it's in their best interests. They do the economics of it There's nothing in the statute that would prevent them from doing that. If airlines want to impose a fee, a cancellation fee on their customers, that's independent of the 9-11 security fee, you know, that has nothing to do with the 9-11 security fee. That is a matter of contract between. Of course it is, which you have to, you have to give me that because obviously Delta and American and United have very different cancellation policies. And Southwest famously is coming up with all sorts of new fare regimes for the way that you can buy and refund your tickets. Could you, using G, require them to give the convenience fee back? I mean, we are just trying to get the money back. What is required, what is, what is required under the statute is that the fees collected be remitted and then TSA can authorize refunds. I, I'm not saying that, you know, that G gives a TSA the authority to prohibit sort of a general cancellation fee, but I do think that any sort of fee that is specifically tied to the 9-11 security fee would be extremely problematic because they are effectively imposing a cost on the customer by virtue of the fact that Congress has designated airlines as the collection agent for this fee. And so it would seem to be an end around the statute and clearly not consistent with the intent of Congress. Remind me, your refund procedure is in the CFR or it's sub-regulatory? There is a provision that requires airlines to refund passengers upon the change of a ticket. So that, that regulatory provision, I believe it's 1510.9B requires that airlines give the refund when the ticket is changed. That's, that, that regulatory provision does not spell out how the airlines get that money back from TSA. And that is stated in the November 2002 guidance, as well as again in the March 2020 guidance. And the 2002 guidance is the one that says you have to remit at the end of the month, but you can get credits for future flight changes, basically. The airline, that is. So they have to pay you on the 30th or 31st or whatever for the fees they collected that month. But the 2002 guidance is the one that says if there's a cancellation or refund or change or whatever, they can, that's the offset procedure. Yes, the offset procedure is in the guidance. The requirement to remit at the end of the month is in the statute. Yeah, that's obviously an E. But all of this stuff, whether it's the CFR provision in 1510.11 or the subrelatory guidance in 2002 is all hinged on the text of the one sentence in subsection G? No, it's not hinged on that at all. I mean, if we, if we were to ignore, I'm sorry, let me back up. I agree with your Honor that, that the, yes, the refund procedure that TSA has created, you know, it derives its authority from subsection G. But if we were to, you know, leave out G altogether, then all we would be left with is an obligation to remit to TSA. And there would be no statutory provision that allows funds to flow back to the passenger, let alone the airline. And again, the refund procedure is designed to refund the passenger and not to refund Southwest. But on sequencing, every, both sides agree, no security fee if no security costs. Yes, I would, I agree, happy to concede that. And then you said administratively, TSA can't refund the ones that inadvertently have been collected, but then no one flies. Yes. But you want them to do it. And you've described where you think, I mean, you want them to disgorge it in spite of their arrangement with passengers who want the year extension. Yeah. That's sort of what you're asking. There's nothing unusual about this sort of refund scheme. I mean, we cite a number of cases, for example, the airline transportation access. Will this all be solved? You know, when you get up to TSA, they take your photo, right? And then you have to stick your driver's license in the little box. And then you have to put your ticket on the little reader. They just, you all can just add a little tap. No problem. I imagine that it's much more difficult than that. I mean, it doesn't, they got so many different instruments there. So for example, like, you know, the, you know, TSA doesn't know information about who paid the fee, whether they canceled their ticket, whether they're making it. No, I'm just saying every time someone actually goes through TSA security physically, so the cost is incurred, you tap for it. But that's, I mean, that would not be consistent with the statute because Congress expressly provided that airlines are to collect the fee on behalf of TSA. So it does not say that TSA, you know, can't. I know, but I'm still stumbling. They did collect it for you. They did remit it to you. Then it comes back again. And you, the government is very happy for them to hold it for the vast majority of people who then within a year fly. So we don't have to force them to go twice. So it's then this group at the very end that have forfeited, but then their arrangement with them tells them as to that, you're out. Again, I don't think it's, you know, let's take the income tax example. I don't think it would be permissible for an employer to contract with an employee to say that I'm going to withhold income taxes from you. And then if you get a refund of income taxes, I'm going to take ownership of your tax refund. Let me just, to be clear, is this just an accounting exercise? What you're saying is if Southwest is required to remit these fees to you, you will give them back to Southwest once they actually refund it to the customer. Once they prove they've refunded the $5 or whatever it is to the customer, then you will give them the offset. But they will not get the offset unless they tell you they've refunded the five something to the customer. That's exactly right, Judge Richmond. So this is an auditing procedure. Yes, this is an auditing procedure. And the reason we are here before this court is because Southwest did not properly provide that refund in these cases. And yet they still asked for the refund. The reason that Southwest did not properly refund its passengers is because at the end of the day, those $5.60 amounts are sitting in Southwest's accounts as revenue. Southwest has booked them as revenue and they are not in the pockets of its passengers. So we know that ultimately any refund under G failed. And if the refund under G failed, then Southwest cannot claim that money back from Southwest. Southwest could say on these, if we give you a flight credit, we'll give you flight credit, but you have to pay us a little bit more. But they still have to refund the fee collected to the passenger. That's what you're saying the regulations require. If Southwest wanted to charge more to have the fee returned in the form of a travel credit, then that would be, I'm sorry, have the entire airfare returned in the form of a travel credit, then obviously that would be a matter between Southwest and the passenger. What we're saying is whatever Southwest does, and this is what all these cases say that apply similar refund schemes, the entire point of a refund scheme like this or the one that's in section 6415 is that the actual taxpayer must get the economic benefit of the refund. And if they don't get the economic benefit, then the collection agent who collected the taxes does not get a refund from the government. That's the only way to set up incentives to make sure that the actual taxpayer gets the money back as TSA wants and as I'm sure Congress intended. He mentioned there's been a suit by passengers against Southwest and the passengers lost. Why did they lose? I'm not sure if I'm referring to, I have seen cases in which customers have tried to sue airlines to recover these fees on the ground that the airlines were not entitled to keep them. And the ones that I have seen, in the cases that I have seen, those cases were dismissed on threshold grounds, I think, based on federal preemption. I'm not familiar with the ins and outs of those, but I have not seen any suits in which customers were actually able to collect from Southwest. And that's not because of the merits, that's not because Southwest is entitled to the fees, but because there are threshold problems with those kinds of suits. Thank you. Your Honor, I want to make two or three fundamental points. First of all, Mr. Shaw concedes that the fee really isn't owed. That's game over. This is not a tax, this is a user fee. But you've collected it, it's not owed yet you've collected it. That's correct. But one sentence, if the government is not entitled to it, that's the end of the analysis as far as TSA is concerned. Well, the government, don't they have the authority to say, we're not entitled to it, but we are entitled to see that the customer gets it back? First of all, I would argue no. But second of all, even if they had that authority, that's not what their actual position is. So Mr. Shaw spent a lot of time talking about the so-called refund procedure under subsection G, which is one simple sentence that says TSA can give back money if the money wasn't owed in the first place. Not super helpful. There aren't any regulations that touch on refunds from TSA at all. There's one provision that mentions refunds, and that is section 15.9b. And it says the airline, it speaks to whether the airline gives refunds to the customer, but it doesn't mandate refunds. It says if there's a change in the itinerary, and put aside the idea of whether or not a cancellation is a change, but assuming that it is, it says it's subject to refund. And TSA itself in the 2002 guidance says that means you have to give a refund if the customer asks. You must just always give a refund. So where's TSA's authority to say, but if you don't do that, by the way, there's no obligation here that any customer asks for the feedback or that Southwest violated that regulation. So where is it anywhere in any statute or regulation that says if the customer doesn't ask, you have to give a refund to the passenger? The answer is no, we don't. And the story gets much worse for TSA. Mr. Shaw talked a lot about subsection G, and oh, this is all about a refund. Think about the tax provisions like section 6415A of the Internal Revenue Code. Well, that's quite bad for the government because as we pointed out in our reply brief, those tax provisions have the same collection and remittance obligations as this statute, but they also have these other provisions like 6415A that explicitly say if you're the collector and you want a refund, you have to give the money back. There's no provision like that here. TSA is just trying to graft provisions like that onto this statute. By the way, which one? Because the rules are different. 6415A says you can get the money back to the collector if you give a refund or get the consent. By the way, we've got the consent here, so we went on that anyway, even if 6415A applied. But other statutes like the one in the Supreme Court's decision regarding the electrical company that we talked about in our brief has different conditions upon which a collector of the tax can get the fee back. Which one applies here, we don't know. And of course, the real answer is none of them apply. Well, if you refunded the precise amount to customers, isn't it clear that you would, TSA would, you would get an offset? Is that much clear? That much is certainly clear. But I thought he said there was a group where you didn't remit at all. Well, that's correct, and I wanted to sort of parse that a little bit. So the whole notion of refunds doesn't even apply to a huge swath of the, I shouldn't say huge, but a significant portion, maybe half of the tickets here, because the fee was never remitted in the first place. So TSA, Southwest never gave the fee to the government in the first place, so the notion about a refund is just totally irrelevant. Not only that, but the government has a huge cheddering problem on this front, because the TSA itself and both the audit and its final decisions conceptualize nothing as a refund. Nowhere does it say, oh, Southwest improperly took a refund or improperly recalled fees. Every reference in the administrative proceedings is to Southwest not remitting the fee in the first place. And I think the reason for that is exactly as you were mentioning, Judge Dickinson, because Southwest is okay with pulling the money back when you give the credit. They say, oh, but then you owe the fee a second time, and once the credit expires, because it's like you've charged the fee a second time. Well, this case is about whether TSA can impose a fee on Southwest in the first instance. It has nothing to do whatsoever with refunds. And I want to close just with the general notion that to the extent that tax concepts apply, and certainly there are some, although the statutes of like 6415A do not apply, but to the extent that this is similar to a tax, there's a long-standing tradition, and Judge Richman, you mentioned this in your decision in the case U.S. v. Marshall, that says doubts must be resolved in the taxpayer's favor. So any doubt in this case should be resolved in Southwest's favor. And you cited a Supreme Court decision, Judge Richman, from more than 100 years ago, U.S. v. Maryland, which explicitly says that. Okay, your time. I know your clock froze, but your time has expired. I apologize. Thank you. Thank you.